IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TUTU COUTURE, INC.;
and AMANDA WHITNEY                                                          PLAINTIFFS

v.                                        Case No. 5:12-CV-05195

SML SPORT LLC;
and SML SPORT LTD                                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants SML Sport LLC and SML Sport Ltd's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 7) and brief in support, Plaintiffs TuTu Couture, Inc. and Amanda Whitney's Response in Opposition (Doc. 9), and Defendants' Reply (Doc. 13). For the reasons stated herein, Defendants' Motion to Dismiss (Doc. 7) is GRANTED.

**I. Background**

On July 26, 2012, Plaintiffs filed their Complaint (Doc. 3) in the Circuit Court of Benton County, Arkansas, seeking damages against Defendants for breach of contract, promissory estoppel, unjust enrichment, and constructive trust. Defendants removed the case to this Court on August 31, 2012 (Doc. 1), based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1441. Plaintiffs in this matter are citizens of Arkansas, and Defendants are citizens of New York and Delaware. (Doc. 12).

Plaintiffs are TuTu Couture, Inc. ("TuTu"), a business that designs and manufactures tutus and other clothing and accessories, and Amanda Whitney, the owner and operator of TuTu. According to the Complaint, Plaintiffs entered into negotiations to sign a joint venture agreement with Defendants SML Sport LLC and SML Sport Ltd. The parties exchanged emails outlining the

terms of the proposed joint venture. (Doc. 9-1, pp. 15-32).[1] Plaintiffs contend that the parties contemplated Defendants' exclusive right to use the TuTu brand. In addition, Defendants were to be responsible for manufacturing and shipping TuTu's merchandise and billing customers, while TuTu was to be in charge of sales and product development. *Id.* at pp. 19-22. The parties discussed in email correspondence how they might divide profits and pay commission on sales to Plaintiffs. (Doc. 3-1).

In May of 2010, Plaintiffs prepared a written Joint Venture Agreement (Doc. 3-2), intended to memorialize the parties' understanding of the terms of the joint venture, and submitted that agreement to Defendants' manager, Christopher Dal Piaz. Though the written agreement was never executed by the parties, Plaintiffs maintain that the parties had a valid and enforceable contract for the sale of TuTu's merchandise, and the parties began to perform under the terms of their joint venture. According to the Complaint, in September of 2010, Plaintiffs ended the business arrangement with Defendants in order to partner with another company. Plaintiff Whitney informed Mr. Dal Piaz of Plaintiffs' decision to terminate the agreement and sell the existing inventory to a third party. (Docs. 3-4 and 3-5).

Plaintiffs' Complaint alleges that Defendants continued to receive proceeds from sales of TuTu's merchandise throughout the latter part of 2010 and into the first quarter of 2011, despite the fact that Defendants' business relationship with Plaintiffs had ended. Plaintiffs further allege that though Defendants profited from sales of TuTu's merchandise from 2010-2011, Defendants never

---

[1] In ruling on Defendants' Motion to Dismiss, the Court has considered these emails, along with affidavits and other evidence submitted by the parties as exhibits to their briefs. "'[T]o defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction[,]' and may do so by affidavits, exhibits, or other evidence." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004) (quoting *Epps v. Stewart Information Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)).

paid any compensation to Plaintiffs, whether in the form of profits or commissions. Plaintiffs claim they are owed $44,013.70 in commissions on net sales for 2010 and $6,358.60 in commissions on net sales for 2011, plus interest. (Doc. 3, p. 4).

In lieu of an answer, Defendants filed a Motion to Dismiss (Doc. 7) pursuant to Federal Rule of Civil Procedure 12(b)(2), asserting the Court's lack of personal jurisdiction. According to the Motion, Defendants maintain that none of their employees or agents have ever been physically present in Arkansas except on a single occasion, when Mr. Dal Piaz was introduced to Ms. Whitney during a brief meeting in Northwest Arkansas prior to the parties entering into contract negotiations. Defendants state that they have never maintained offices, bank accounts, property, employees, or agents in Arkansas, nor have they made direct sales to any locations in Arkansas. Further, Defendants dispute that a contractual relationship existed between themselves and Plaintiffs.

Plaintiffs counter that Defendants have had sufficient contacts with Arkansas so as to justify the Court's personal jurisdiction in this matter. In particular, Plaintiffs state that Defendants knowingly entered into an sales agreement with Plaintiffs, who are citizens of Arkansas, and that Defendants controlled the manner of performance under the parties' agreement; were responsible for shipping and insuring Plaintiffs' merchandise that was sent to national retailers, including retailers that maintained stores in Arkansas; received income from sales generated by Plaintiffs' merchandise; and ultimately failed to compensate Plaintiffs in any manner.

**II. Legal Standard**

"The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps*, 327 F.3d at 647. Considering that a plaintiff is only required to make a prima facie showing of jurisdiction to defeat

a motion to dismiss pursuant to Rule 12(b)(2), "the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Dakota Industries, Inc. v. Dakota Sports Wear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). Nevertheless, "[t]he plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citation omitted).

In undertaking an analysis of personal jurisdiction, this Court must examine whether the exercise of such jurisdiction is proper under the long-arm statute of the forum state, Arkansas. *The Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225 (8th Cir. 1987). Arkansas' long-arm statute provides for jurisdiction over persons and claims to the maximum extent permitted by the due process clause of the United States Constitution. *Pangaea Inc. v Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011); Ark. Code Ann. § 16-4-101. "Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).

There are two ways in which the due process clause may be satisfied such that minimum contacts between the defendant and the forum state are established: the first way is through general jurisdiction, and the second way is through specific jurisdiction. General jurisdiction refers to the power of a court to hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, regardless of where the cause of action actually arose. *Helicopteros Nacionales*

*de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Specific jurisdiction, on the other hand, exists when a defendant purposefully directs its activities at the forum state, and the lawsuit "relates to" or "arises from" those activities. *Johnson v. Arden*, 614 F.3d 785, 794-95 (8th Cir. 2010). In finding that either general or specific jurisdiction exists, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In the Complaint, Plaintiffs assert that Defendants are subject to both general and specific personal jurisdiction. Accordingly, the Court will examine whether personal jurisdiction may be exerted over Defendant under either theory.

### III. Discussion

#### A. General Jurisdiction

The Court first examines whether Defendants are subject to general personal jurisdiction. General jurisdiction may be proper when a defendant has such "continuous and systematic" contacts with the forum state that it is generally subject to suit there, even if those contacts are unrelated to the cause of action asserted by the plaintiff. *Helicopteros*, 466 U.S. at 415-16. Here, in support of their argument for general jurisdiction, Plaintiffs point out that Defendants (1) sell goods to national retailers, including retailers with stores in Arkansas and (2) have obtained trademark protection on certain goods placed in the stream of commerce, which potentially flows to all states, including Arkansas. Plaintiffs identify no other factors supporting a finding of general jurisdiction. They do not appear to dispute that Defendants have no offices, property, stores, employees, or agents in Arkansas and have not sent any employees or agents to Arkansas to monitor sales, retailing,

distribution, or collections processes.

The sole theory relied upon by Plaintiffs in arguing in favor of general jurisdiction is commonly known as the "stream-of-commerce theory," which was first discussed by the U.S. Supreme Court in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987). The theory is that a defendant, by placing its goods in the stream of commerce, subjects itself to personal jurisdiction in the places where the defendant knows or should have known that its goods would be distributed. *Id.* at 112. The *Asahi* court analyzed this theory and ultimately determined that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state" and that there must be evidence of "[a]dditional conduct . . . [to] indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* The court made clear that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*

Subsequent to the Supreme Court's ruling, the Eighth Circuit interpreted *Asahi* to find personal jurisdiction in the limited situation where a defendant had "poured its products into regional distributors throughout the country." *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir. 1994), *cert. denied*, 513 U.S. 948 (1994). In *Barone*, the court concluded that the defendant had not merely placed its goods into the national or regional stream of commerce, but had instead intended to affect a defined multi-state area by inundating that market with its products. *Id.*

Nevertheless, the court later clarified in *Viasystems, Inc. v. EBM- Papst St. Georgen GMBH & Co., KG*, 646 F.3d 589, 597 (8th Cir. 2011), that the *Barone* exception to the stream-of-commerce rule could only be invoked in finding specific jurisdiction, rather than general jurisdiction. A stream of commerce theory could never be the basis for a court's finding of general personal jurisdiction because a defendant's act of placing its products in the stream of commerce—even if the stream fed a targeted, multi-state region—"does not establish the 'continuous and systematic' affiliation necessary to empower [the forum's] courts to entertain claims unrelated to the foreign corporation's contacts with the State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2856 (2011). Accordingly, since the *Barone* decision, the Eighth Circuit has declined to use the stream-of-commerce theory to support a finding of general jurisdiction. *See, e.g., Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 615 (8th Cir. 1998); *Viasystems*, 646 F.3d at 597; *Dever*, 380 F.3d at 1075.

As Plaintiffs cannot make a prima facie showing of general jurisdiction merely by presenting evidence that goods were placed in the stream of commerce, or that trademark protection was secured for such goods, the Court concludes that no general jurisdiction exists.

### B. Specific Jurisdiction

"Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum state, the cause of action, and the defendant." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912 (8th Cir. 2012) (citing *Helicopteros*, 466 U.S. at 414). The Eighth Circuit has established a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant. These factors, from *Land-O-Nod v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983), are: (1) the nature and quality of contacts with

the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. "[The court] must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal jurisdiction determination." *Johnson*, 614 F.3d at 794 (citation omitted).

### 1. Nature and Quality of Contacts

The first *Land-O-Nod* factor is the nature and quality of Defendants' contacts with Arkansas. Assuming the facts pled in Plaintiffs' Complaint are true, and a joint venture agreement actually existed between the parties, the Eighth Circuit has held that "[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state" to establish specific jurisdiction. *Mountaire Feeds, Inc. v. Argo Impex, S.A.*, 677 F.2d 651, 655 (8th Cir. 1982) (citing *Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979)). Moreover, "[i]t is a defendant's contacts *with the forum state* that are of interest in determining if in personam jurisdiction exists, *not its contacts with a resident*." *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n. 6 (8th Cir. 1977) (emphasis added).

Here, employees and agents of Defendants made contact with Plaintiffs, who are Arkansas residents, through (1) a single face-to-face meeting in Northwest Arkansas between Plaintiff Whitney and Defendants' manager, Mr. Dal Piaz, in May of 2010, prior to the parties entering into contract negotiations; (2) various email and telephone communications between Ms. Whitney and employees and agents of Defendants from May of 2010 until at least September of 2010; and (3) actual sales of Plaintiffs' merchandise in Arkansas by and through Defendants, including sales made through

Dillards department store, which has a distribution center located in Arkansas.

In considering the above contacts with Arkansas, all of which are assumed to have been made in furtherance of the parties' alleged contractual relationship, the Court finds that the nature and quality of these contacts do not support a finding of specific jurisdiction. In comparing the contacts alleged in the instant matter with those in other Eighth Circuit breach-of-contract cases, it is evident that Defendants' contacts here are insufficient in nature and quality to support a finding of personal jurisdiction. For example, in *Austad Co. v. Pennie & Edmonds*, 823 F.2d at 225, it was clear to the Court of Appeals that a defendant sending employees to the forum state to review and copy documents at the plaintiff's facilities and later making phone calls, using courier services, paying checks, and submitting monthly billings to the plaintiff in the forum state were insufficient to establish specific jurisdiction. Similarly, in *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d at 1103, the Court of Appeals reversed the district court's finding of personal jurisdiction over a non-resident defendant after it was determined that the defendant had no place of business in Arkansas, was not registered to do business in Arkansas, and had no offices, inventory, bank accounts, real estate, personal property, employees, or agents in Arkansas. *Id.* Even more striking, evidence of as many as 100 telephone calls between the parties in *Burlington* was deemed by the court to be merely "a consideration" in assessing the parties' business relationship, but ultimately "insufficient, alone, to confer personal jurisdiction." *Id.* Finally, in *Mountaire Feeds, Inc. v. Argo Impex, S.A.*, 677 F.2d at 655, no personal jurisdiction was exerted over a defendant that did not maintain offices or agents in Arkansas, never sent sales representatives into Arkansas in connection with the sales contract at issue, did not supervise performance in Arkansas, and was not required to perform in Arkansas under the terms of the contract.

In sum, a review of the relevant Eighth Circuit case law reveals that no personal jurisdiction exists if the connection between a defendant and the forum state is limited to emails, calls, and faxes sent back and forth between the parties in furtherance of a contract. *See, e.g., Viasystems*, 646 F.3d at 594 (scattered emails, phone calls, and wire transfer did not constitute deliberate and substantial connection with forum state); *Digi-Tel*, 89 F.3d at 523 (numerous letters, faxes and phone calls to forum state in connection with parties' contract not enough to create jurisdiction); *Porter v. Berall*, 293 F.3d 1073, 1076 ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause.").

In the instant case, the parties did not contemplate in their agreement that sales in Arkansas would be proportionally greater than in any other state, nor that sales efforts would target Arkansas or the surrounding region. Quite to the contrary, the "Joint Venture Agreement"—which was never executed by the parties but was drafted by Plaintiffs and is relied upon by Plaintiffs as evidence of the parties' agreement—states in the "Recitals" section that Defendants' obligation pursuant to the agreement was to sell Plaintiffs' merchandise throughout the nation and across the globe:

> "G.  Whereas, the Joint Venturers wish to jointly conduct a business, the primary purpose of which will be to further develop and manufacture the Products, as defined herein, and to sell and distribute the Products *throughout the United States and to various foreign markets . . .*"

(Doc. 3-2) (emphasis added).

Contrasting the facts of this case with those of a similar case in which specific jurisdiction was supported, it becomes even clearer why this Court lacks specific jurisdiction in the case at bar. In *Bell Paper Box, Inc. v. U.S. Kids*, 22 F.3d at 819, the court found that specific jurisdiction was present when (1) all goods subject to the parties' contract were produced in the forum state, and (2) the parties' contract provided for exclusive delivery of the final product to a destination within the

forum state. *Id.* The *Bell Paper* court determined that "[t]he controlling distinction is that the subject matter of this dispute occurred entirely within the forum state," and because of that fact, the court agreed that in making the contract, the defendant had purposefully directed its activities at the forum state. *Id.*

In the instant dispute, however, the conditions present in *Bell Paper* are noticeably absent, in that the merchandise that is the subject of Plaintiffs' and Defendants' joint venture was not manufactured in Arkansas (Doc. 8, p. 12), was not contemplated to be shipped exclusively to Arkansas (Doc. 3-2), and apparently made its way into Arkansas via the national department store chain Dillards, which according to its website has a retail presence in 29 out of 50 states. *See* http://www.dillards.com.[2]

Accordingly, it cannot be said the nature and quality of the contacts that Defendants had with Arkansas in the course of the parties' relatively brief association warrant a finding of specific jurisdiction.

### 2. Quantity of Contacts

The second *Land-O-Nod* factor, the quantity of Defendants' contacts with Arkansas, is

---

[2] Plaintiffs make much of the fact that Defendants allegedly shipped or arranged to ship Plaintiffs' merchandise to Dillards by way of a Dillards distribution center located in Mabelvale, Arkansas. (Doc. 9, p. 3). Ms. Whitney also submitted an affidavit to the Court in which she testifies that one of the biggest merchandise orders that Defendants "processed" was "to Dillards, Inc., a national department store with locations in numerous states, including Arkansas." (Doc. 9-1, p. 3). Further, Ms. Whitney states that she "personally visited Dillards locations in Fayetteville, Arkansas and Rogers, Arkansas to inspect the products that were sold to Dillards through SML Sport." *Id.* The Court notes that none of the above facts establish that Defendants were targeting business to Arkansas for purposes of a personal jurisdiction analysis. Ms. Whitney observed Plaintiffs' merchandise for sale in Arkansas because Ms. Whitney lives in Arkansas and happened to visit stores in her state. The fact remains that the product ended up in Arkansas because it was placed in the national stream of commerce, not because the parties agreed to sell Plaintiffs' merchandise exclusively in Arkansas or to focus sales in Arkansas or the surrounding region.

similarly insufficient. Even if the Court were to assume dozens of emails and telephone calls between representatives of Plaintiffs and Defendants in furtherance of the parties' contract, these contacts, as discussed above, are, by their nature, insufficient to justify the exercise of personal jurisdiction under the due process clause. *See Burlington*, 97 F.3d at 1103. Accordingly, the numerosity of such contacts must be afforded little weight in the Court's analysis of specific jurisdiction. *See Digi-Tel*, 89 F.3d at 523.[3]

As to the quantity of contacts between Defendants and Dillards related to sales made in Arkansas, Ms. Whitney's own affidavit confirms that Defendants shipped orders to Dillards that were "placed by Dillards"—not by Defendants —and Dillards is "a national department store with locations in numerous states, including Arkansas." (Doc. 9-1, pp. 3-4). Accordingly, it cannot be said that Defendants purposely directed sales of merchandise to Arkansas, regardless of the number of those sales. Instead, it appears to the Court that Defendants directed sales of merchandise to a national retailer, with the intent that the retailer determine the method of national distribution of the merchandise. There is no indication that Defendants controlled or even influenced the distribution and site of retail for merchandise that was sold to Dillards. *See Guinness Import*, 153 F.3d at 614 (no specific jurisdiction found where court determined that defendant did not exercise control over distribution of its products or control importer's decisions as to distribution).

### 3. Relation of the Cause of Action to the Contacts

The third factor, the relation of the cause of action to Defendants' contacts with the forum state, also weighs against a finding of specific jurisdiction. Defendants made contacts with Plaintiffs in Arkansas in furtherance of the parties' joint venture agreement to sell Plaintiffs' merchandise

---

[3] On this point, the Court is not convinced that the email and telephone contacts during the course of the parties' roughly three-month association were numerous by any objective measure.

nationwide. As discussed above, the fact that one or more parties to the contract reside in the forum state is not enough to establish specific jurisdiction. *Mountaire*, 677 F.2d at 655. The parties' emails, phone calls, and other communications made in furtherance of the contract also do not, in themselves, constitute the type of contacts sufficient to confer specific jurisdiction. *Burlington*, 97 F.3d at 1103. Finally, sales made by Defendants in furtherance of the contract's provisions to stores in Arkansas were not contacts purposely directed to Arkansas. Such sales were made in Arkansas because merchandise was placed in the stream of commerce via a national retailer. Defendants' knowledge as to whether sales would occur in Arkansas and Defendants' intent to have sales occur in Arkansas are both unknown; however, the emails of the parties and the Joint Venture Agreement memorializing the parties' intent make no mention of Arkansas—or indeed any particular state. Plaintiffs have therefore failed to present a prima facie case establishing Defendants' purposeful availment of the benefits and protections of Arkansas' laws, such that Defendants should have reasonably anticipated being haled into court in Arkansas.

### 4. Interest of Forum and Convenience of Parties

Before the Court considers the final two *Land-O-Nod* factors, it is important to recognize that they cannot outweigh the first three factors. *See Land-O-Nod*, 708 F.2d at 1340 ("For instance, the last two factors are said to be of secondary importance and not determinative."). Even if the Court were to assume that the fourth factor, which concerns the interest of the forum in litigating this matter, weighed in favor of Plaintiffs, it appears that the fifth and final factor, the convenience of the parties, is a draw: litigating this case in Arkansas would be convenient for Plaintiffs but inconvenient for Defendants. The Court therefore concludes that because the convenience of Plaintiffs does not outweigh the overall absence of minimum contacts in this case, specific

jurisdiction is not justified.

## IV. Conclusion

For the reasons set forth above, the Court finds that Defendants are not subject to either the general personal jurisdiction or specific personal jurisdiction of this Court, as Plaintiffs have failed to make a prima facie showing of jurisdiction pursuant to Rule 12(b)(2). Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 7) is GRANTED, and this case is dismissed without prejudice.

IT IS SO ORDERED this 31st day of January, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE